FILED '08 SEP 18 10:34 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRENCE L. JESSIE,

        Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

        Defendant.

Civil No. 07-900-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff Terrence L. Jessie brings this action pursuant to section 205(g) of the

Social Security Act, as amended (Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the Commissioner's final decision denying plaintiff's application for

supplemental security income benefits. For the reasons explained, the decision of the

Commissioner should be reversed and remanded for further proceedings.

## BACKGROUND

Plaintiff applied for SSI benefits alleging disability commencing November 11, 1999.

His applications were denied. Plaintiff requested a hearing, which was held before an

Administrative Law Judge (ALJ) on September 13, 2006. Plaintiff, represented by counsel,

appeared and testified, as did a vocational expert.  On October 18, 2006, the ALJ rendered

an adverse decision, and the Appeals Council denied plaintiff's request for review.

At the time of the hearing and the ALJ's decision, plaintiff was forty-seven years old.

Plaintiff has about an eleventh grade education.  He has vocational training in drafting.  He

has relevant past work experience as a cook, warehouse worker, and maintenance worker.

Plaintiff alleges disability as of November 11, 1999, based upon post polio syndrome,

diabetes, a pinched nerve in his neck leg and knee problems, lower back problems, and a

right arm problem.  The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence in the record.  Hammock

v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the

record as a whole, and  weighs "both the evidence that supports and detracts from the

[Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Where the evidence is susceptible of more than one rational interpretation, the

Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions

solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but

any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).  The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."  Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

3 - REPORT AND RECOMMENDATION

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 11, 1999. (Tr. 21.)

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's diabetes mellitus (Type II); degenerative disc disease in his lumbar spine with disc protrusion at L4-5 and L5-S1; disc bulges in his cervical spine located at C4-5, C5-6, and C6-7; and pain in his lower extremities, status post anterior cruciate ligament repair on his left knee and a pin in his left ankle due to complications caused by polio, constitute severe impairments. (Tr. 21.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in

combination, were not severe enough to meet or medically equal any of the listed impairments. (Tr. 22.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work."  If the claimant is so able, then the Commissioner finds the claimant "not disabled."  Otherwise, the inquiry advances to step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week.  Social Security Ruling (SSR) 96-8p.  The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments.  Id.  In this case, the ALJ found that plaintiff retains an RFC which allows him to perform light work:

> He is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  His ability to sit, stand and walk is unrestricted.  He requires a sit/stand opinion to be executed at will.  He should avoid climbing ropes, scaffolds and ladders.  He is able to occasionally bend, stoop, kneel and crouch.  He should avoid hazards (i.e. moving equipment, machinery and unprotected heights).  Due to distractions of pain and the possible side effects of medication, he is limited to simple and repetitive work.

(Tr. 23.) The ALJ found that plaintiff could not perform his past relevant work. (Tr. 26.) Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this

burden, then the claimant is deemed disabled.  Here, the ALJ found that, considering

plaintiff's age, education, work experience, and residual functional capacity, he could

perform jobs which exist in significant numbers in the national economy.  (Tr. 26.)

Therefore, the ALJ found that plaintiff was not under a disability.  (Tr. 19, 27.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not

supported by substantial evidence and contains errors of law.  Plaintiff argues that the ALJ

erred by (1) effectively rejecting the written statement from a third party because of

plaintiff's and the third party's "personal relationship"; (2) failing to develop the record

about his alleged depression with anxiety; (3) failing to properly assess his credibility

pursuant to SSR 96-7p; (4) failing to follow the mandatory requirements of SSR 96-8p

when formulating his RFC; and (5) the ALJ's step five finding is unsupported by the

evidence and contrary to law.  Plaintiff further contends that, if the court finds that a

reversal is not warranted, this case should be remanded pursuant to sentence six because

there is "new and material evidence."

**Lay witness testimony**

An ALJ must consider the testimony of friends and family members.  Smolen v.

Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  To disregard such lay testimony violates 20

C.F.R. §§ 404.1513(e)(2), 416.913(e)(2), which mandates consideration of observations

by non-medical sources regarding how an impairment affects a claimant's ability to work.

See SSR 96-7p.  "Lay testimony as to a claimant's symptoms is competent evidence that

6 - REPORT AND RECOMMENDATION

an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Stout v. Comm'r, Soc. Security Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ "considered with caution" the statements made by a third party on a disability report dated May 24, 2004, because the third party had a personal relationship with plaintiff and did not possess the expertise or the motivation to offer an objective or functional assessment. (Tr. 23.) In Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006), the Ninth Circuit determined that the ALJ did not commit error in doubting the credibility of testimony from a claimant's former girlfriend for the reasons that she had a close relationship with claimant and because she was "possibly 'influenced by her desire to help [him].'" See Kintner v. Astrue, No. CV-07-3048-CI, 2008 WL 680201, at *6 (E.D. Wash. Mar. 7, 2008) (because of mother-in-law's close relationship with claimant, her testimony could not be considered a disinterested objective observer of claimant's limitations found to be valid reason for discounting testimony). Referring to the ALJ's reason that the third party lacked expertise, defendant argues that lay witness statements attributing behavior to a particular cause is not competent evidence. In Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996), cited by defendant, the Ninth Circuit stated that medical diagnoses are beyond the competence of lay witnesses. However, the only statement referenced by defendant that is remotely related to a diagnosis is the third party's statement that, "'[plaintiff's] back is in terrible pain always.'" (Def. Brief at 7 (citing Tr. 91).) This

statement is in response to the question, "Do the illnesses, injuries, or conditions affect his/her sleep? [and] If YES, how?" (Tr. 91.) There is no statement in the report indicating the third party proffered any medical diagnosis which, as stated above, are beyond the competence of lay witnesses. The remaining reasons by defendant in support of his argument that the ALJ properly discounted lay testimony will not be considered because the reasons offered are not reasons given by the ALJ. Although not every reason relied on by an ALJ to discount credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. See Batson v. Commissioner of Soc. Security Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, substantial evidence supports the ALJ's determination to discount the third party's statements.

**Development of the record**

Plaintiff first contends that the nonexamining physician's rationale for minimizing a mental impairment is contrary to law and the absence of mental health treatment does not support the ALJ's decision to dismiss plaintiff's impairment of depression with anxiety as a nonsevere impairment.

The regulations provide in pertinent part that, "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). The regulations further provide that, "An impairment or combination of impairments is not severe if it does not

significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). As to mental impairments, 20 C.F.R. § 416.920a provides that in evaluating severity, a "special technique" must be followed, which rates the degree of a claimant's functional limitation in four broad areas.

On June 16, 2004, plaintiff saw Debbie Reynolds, A.N.P., for follow up of his back pain. He told her that he "gets very anxious particularly around 7/4 with all the fireworks and explosions." In her Assessment/Plan, Ms. Reynolds states: "6. Anxiety. will address acupuncture." (Tr. 205.)

Agency psychologist Frank Lahman, Ph.D., completed a Psychiatric Review Technique Form (PRTF) on August 25, 2004. Dr. Lahman considered plaintiff's history from April 27, 2004, to August 24, 2004, and referenced an agency Claim Summary dated August 24, 2004, prepared by "Karyn," which included plaintiff's office visit to nurse practitioner Reynolds in June 2004 and Reynolds' notation of anxiety. The Medical Conclusions - Psychological portion of the Claim Summary states in part: "Claimant is not receiving any treatment or medication for this impairment  other than acupuncture. Neither MER nor ADLs suggest any significant functional limitation from this impairment [feeling anxious]. Claimant's anxiety by history is currently assessed as non-severe." (Tr. 243.) On the PRTF, Dr. Lahman assessed category 12.06 Anxiety-Related Disorders, finding that a medically determinable impairment of Anxiety NOS was present. As to the B Criteria, Dr. Lahman found that, for each of the functional limitations of "Restrictions of Activities of Daily Living," Difficulties in Maintaining Social Functioning," Difficulties in

9 - REPORT AND RECOMMENDATION

Maintaining Concentration, Persistence, or Pace," and "Episodes of Decompensation, Each of Extended Duration," plaintiff had "None" Degree of Limitation. (Tr. 238.) Dr. Lahman's medical disposition was "Impairment(s) Not Severe" (Tr. 228). (Tr. 228-43.)

Although the ALJ prefaces his discussion of plaintiff's mental impairment with the statement, "Despite the claimant's lack of treatment, he has been assessed for mental impairments" (Tr. 22), it is clear he did not find lack of treatment as the reason to conclude that plaintiff's mental impairment was nonsevere. The ALJ discussed in detail the requirements of the regulations for evaluation of the severity of mental impairments. Relying on the PRTF completed by Dr. Lahman, the ALJ found that plaintiff's anxiety did not constitute a severe medically determinable impairment.[1]   No error occurred in this regard.

Plaintiff also contends that the ALJ should have developed the record regarding his mental impairment and ordered a consultative evaluation or questioned his physicians about the impact of his anxiety with depression.

In the Ninth Circuit, the ALJ has an "independent '"duty to fully and fairly develop the record and to assure that the claimant's interests are considered."'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288). The duty to further develop the record

---

[1]   The ALJ states that Dr. Lahman found that the first three functional areas resulted in "'mild'" limitations, rather than the "None" actually found by Dr. Lahman. However, pursuant to 20 C.F.R. §416.920a(d)(1), if the degree of limitation in the first three functional areas are rated as "none" or "mild," and "none" in the fourth area, as here, "we will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 416.921)."

10 - REPORT AND RECOMMENDATION

is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (requirement for additional information "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."). Such a duty exists even where the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Also, the ALJ's duty is heightened where the claimant may be mentally ill. Tonapetyan, 242 F.3d at 1150.

The record here is neither ambiguous nor inadequate to allow the ALJ to evaluate the evidence properly. The ALJ did not err in not further developing the record as to plaintiff's anxiety.

**Plaintiff's Testimony**

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen, 80 F.3d at 1281; SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the

11 - REPORT AND RECOMMENDATION

intensity, persistence, and limiting effects of the claimant's symptoms.  See SSR 96-7p.
Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject
a claimant's symptom testimony regarding the severity of symptoms "only if he makes
specific findings stating clear and convincing reasons for doing so."  Smolen, 80 F.3d at
1283-84; Dodrill, 12 F.3d at 918; Carmickle v. Comm'r, Soc. Security Admin., 533 F.3d
1155, 1160 (9th Cir. 2008) (and cases cited).  General findings are insufficient; rather, the
ALJ must identify what testimony is not credible, and what evidence suggests that the
testimony is not credible.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The
Commissioner cannot reject a claimant's symptom testimony solely because it is not fully
corroborated by objective medical findings.  Cotton, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider, for example:

(1) ordinary techniques of credibility evaluation, such as the claimant's
reputation for lying, prior inconsistent statements concerning the symptoms,
and other testimony by the claimant that appears less than candid; (2)
unexplained or inadequately explained failure to seek treatment or to follow
a prescribed course of treatment; and (3) the claimant's daily activities. . . .
In evaluating the credibility of the symptom testimony, the ALJ must also
consider the factors set out in SSR 88-13. . . .  Those factors include the
claimant's work record and observations of treating and examining physicians
and other third parties regarding, among other matters, the nature, onset,
duration, and frequency of the claimant's symptoms; precipitating and
aggravating factors; functional restrictions caused by the symptoms; and the
claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, the ALJ found that plaintiff's statements concerning the intensity, persistence,
and limiting effects of his symptoms were not entirely credible.  The ALJ noted the
evidence in the record suggesting that plaintiff is malingering.  Plaintiff saw Debbie

12 - REPORT AND RECOMMENDATION

Reynolds, A.N.P., on May 5, 2004, complaining of chronic low back pain.  He reported he had too much pain to work.  Ms. Reynolds noted on physical examination that plaintiff "moves about freely."  In her assessment and plan, Ms. Reynolds states as to plaintiff's chronic back pain:  "I have to question how much this pain is real.  (Tr. 209.)  On May 19, 2004, plaintiff saw Ms. Reynolds for followup of his back pain.  Ms. Reynolds noted on physical examination that plaintiff was lying prone on the exam table when she entered the room, but "he moves quite fluently when he gets up.  Straight leg raises are negative."  In her assessment and plan portion of her notes, as to his chronic back pain, Ms. Reynolds stated that she had Dr. Balme review plaintiff's MRI and that, "He has got apparently nothing of significance . . . .  I suspect that he is malingering.  He exam is negative.  He had been in a vocational rehabilitation program and may be malingering due to this."  (Tr. 208.)  The ALJ specifically found that plaintiff's allegations of back and neck pain are "likely exaggerated."  (Tr. 25.)  Because there is medical evidence of malingering in the record, the clear and convincing standard for discounting plaintiff's testimony is not applicable.[2]  Carmickle, 533 F.3d at 1160 (citing Greger, 464 F.3d at 972; Morgan v. Comm'r of Soc. Security Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Pfeiffer v. Apfel, No. CIV. 99-1526-HA, 2001 WL 204831, at *4 (D. Or. Jan. 29, 2001), aff'd, 47 Fed. Appx. 831 (9th Cir. 2002); see Smolen, 80 F.3d at 1283-84.

---

[2]    The ALJ need not make a specific finding that a claimant is malingering; all that is necessary is that there is affirmative evidence suggesting malingering in the record. Carmickle, 533 F.3d at 1160 n.1.; see Greger, 464 F.3d at 972; Morgan, 169 F.3d at 599; Pfeiffer, 2001 WL 204831, at *4.

13 - REPORT AND RECOMMENDATION

The ALJ first found that plaintiff's lack of work activity and diminished earnings weakened his credibility.  The record supports the ALJ's finding.  In the fourteen years between 1986 and 1999, the year plaintiff claims he became disabled, plaintiff had earnings in five years.  A poor work history is a sufficient reason to discounting a claimant's subjective testimony.  Thomas, 278 F.3d at 959 (extremely poor work history with years of unemployment even before claim of disability); Smolen, 80 F.3d at 1284.

Plaintiff contends that there is no evidence to support the ALJ's speculation that plaintiff was selling marijuana.  The ALJ found that plaintiff provided inconsistent testimony regarding his pattern of use of medical marijuana, first testifying that he used $15 per week, or $60 per month, and later testifying that he used $300 per month.  (Tr. 336, 348-53.)  It is true that the ALJ attempts to explain the discrepancy by stating that plaintiff may be selling some of the marijuana to third parties, which would be consistent with his criminal history.  However, the ALJ did not discount plaintiff's testimony for the reason that he is selling marijuana, but because of the inconsistencies in his testimony  (Tr. 24), which is a legitimate reason to discount credibility.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); Thomas, 278 F.3d at 958; SSR 96-7p.

Plaintiff contends that the ALJ mischaracterized the record when he found that the record showed his back pain had improved in 2000.  The ALJ found that the record reflected that plaintiff's back pain improved in 2000, but plaintiff had testified that his back pain had not improved but has been consistently debilitating; he found that the conflicts created significant issues concerning plaintiff's veracity.  In a Claimant Pain Questionnaire

signed on May 24, 2004, plaintiff states that he has burning, aching pain in his back, legs, arm and neck; his pain lasts all day and nothing makes the pain better. (Tr. 87-89.) On an activities of daily living and socialization form signed the same date, plaintiff states that his pain has increased. (Tr. 99-105.) The record cited by the ALJ is a chart note by John Pieniazek, M.D., who saw plaintiff on November 3, 2004. On that date, plaintiff's chief complaint was back pain. Dr. Pieniazek states:

> [Plaintiff] states that his back pain flares up. Sometimes it is better, sometimes it is worse, but he has been having problems with his back since the year 2000 after suffering trauma secondary to a fall on the stairs . . . and ever since has been experiencing back pain. . . . He went to physical therapy. He was treated with muscle relaxants. It got better, but since 2003 his pain has been getting worse.

(Tr. 296.)

The ALJ also discounted plaintiff's testimony because he has not complied with medical treatment. Plaintiff contends that the ALJ ignored his explanation of why he did not follow his insulin routine (see Tr. 338-39). However, the ALJ found that, in addition to not taking his insulin as prescribed, plaintiff also did not take his oral medications as prescribed and he does not routinely take his blood sugar tests. The ALJ found that plaintiff's noncompliance suggested that he did not have a sincere interest in achieving medical and functional improvement. On December 29, 2003, nurse practitioner Reynolds noted that plaintiff had poor control of his diabetes. Plaintiff had run out of insulin and the numbers from plaintiff were inconsistent with his hemoglobin A1c. Ms. Reynolds told plaintiff he needed to watch his diet and get back to checking his glucose. (Tr. 217.) On May 19, 2004, Ms. Reynolds stated in her progress notes that plaintiff's diabetes was

uncontrolled.  In addition to not taking his insulin "on many days," using it only about five times since he was last in on about May 5, 2004, plaintiff "sometimes" took his blood sugar.  Ms. Reynolds was uncertain as to the frequency plaintiff took his oral medications.  She noted that plaintiff complained of pain from peripheral neuropathy, but he hadn't been taking the Elavil or had been taking it only on an intermittent basis.  Plaintiff was to return to the clinic in two weeks with a log book.  (Tr. 208.)  Noncompliance with treatment is a legitimate basis for discounting a claimant's allegations.  Warre v. Comm'r of Soc. Security Admin., 439 F.3d 1001, 1008 (9th Cir. 2006) (and cases cited).

Plaintiff contends that in doubting his credibility because he experienced "'substantial improvement in his overall functionality and quality of life'" once he started to comply with treatments,'" the ALJ mischaracterized the record.  (Pl. Brief at 20, citing Tr. 24.)  First, it is not clear from the decision that the ALJ relied on this as a reason to discount plaintiff's credibility.  Even, if he did, the reason is supported.  While the ALJ's statement might be somewhat of an overstatement, it is not an unreasonable inference from the record cited.  On June 2, 2004, plaintiff reported to nurse practitioner Reynolds that he was "getting his blood sugars much better controlled and feels better.  He's having some improvement in the pain in his legs."  Ms. Reynolds noted that a review of plaintiff's glucose log showed most blood sugars showed good control.  (Tr. 206.)  On July 14, 2004, plaintiff reported to Ms. Reynolds that his diabetes was "doing quite well," and stated that "his feet are feeling much better [and] Vision is clearing a bit."  (Tr. 203.)  He saw Alison Mitchell, M.D., on March 14, 2006, for followup on his diabetes.  Chronic back pain

continued to be plaintiff's primary concern. Dr. Mitchell noted that plaintiff appeared to be making good progress with his diabetes after being on Lantus and Humalog insulin. (Tr. 263.) On July 14, 2006, plaintiff told Dr. Mitchell that his blood sugars have been much better since switching to the new medications. However, plaintiff was frustrated with the pain in his legs and back. Dr. Mitchell noted on objective exam that, "Patient actually looks far more comfortable than he normally does and walked into the exam room looking fairly comfortable." Dr. Mitchell noted that plaintiff's glycemic control had significantly improved. She opined that the pain in plaintiff's legs was due to diabetic neuropathy and stressed the importance of tight glycemic control. (Tr. 262.)

The ALJ also found that the evidence suggested a level of functioning much greater than what he alleges in his application and testimony. Plaintiff contends that the ALJ failed to acknowledge third-party evidence that he spends 10-12 hours a day watching TV (see Tr. 94). However, the Court has found that the ALJ properly discounted plaintiff's third-party evidence, supra. The ALJ's reason that treatment records show he is able to walk without difficulty is supported by nurse practitioner Reynolds' records in July 2004 (Tr. 203) and other progress notes discussed supra. On June 15, 2005, plaintiff saw Dr. Pieniazek, complaining of contracture of the index fingers of both of his hands. Dr. Pieniazek diagnosed flexor tenosynovitis of the palm, explaining that this was most likely because of "over use." He was instructed to ice the area, especially after a heavy day's work or repetitive-type work with his hands. (Tr. 280.) Although the evidence of plaintiff's activities may be interpreted in a way more favorable to him, the ALJ's interpretation here

is reasonable and supported by the record.  See Burch, 400 F.3d at 680-81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas, 278 F.3d at 959.

The ALJ also found additional conflicts between plaintiff's complaints of back pain and the absence of objective medical evidence to support the allegations.  The ALJ noted plaintiff's MRI exam, but also noted there were no neurological findings and, therefore, found that plaintiff's allegations of back and neck pain are "likely exaggerated." (Tr. 25.) Plaintiff contends that the ALJ failed to recognize the idiosyncratic nature of pain, and ignored repeated references to muscle spasms observed by physicians.

A February 6, 2004, MRI of the cervical spine showed at C4-5 diffuse disk bulge partially effacing the anterior thecal sac, more pronounced on left, and producing moderately severe left foramen stenosis; at C5-6 similar diffuse disk bulge, with intervertebral foramina moderately severely narrowed bilaterally; and at C6-7 minimal diffuse disk bulge without significant narrowing. (Tr. 171.) On February 13, 2004, nurse practitioner Reynolds reviewed plaintiff's MRI, noting it showed "bulging disk C4 through C6." Her assessment/plan was to refer plaintiff to neurosurgery. (Tr. 215.) Ms. Reynolds noted on physical exam on February 27, 2004, that reflexes were one-half and equal bilaterally; straight leg raises were positive at about 60 degrees bilaterally; and weakness with dorsiflexion of left leg. Plaintiff walked with a limp favoring his left leg. She assessed neck pain with referral to neurosurgery, and low back pain with apparent radiculopathy and weakness. (Tr. 214.)

18 - REPORT AND RECOMMENDATION

On March 10, 2004, Ms. Reynolds gave plaintiff Vicodin at his request, noting: "I'm not quite sure what's going on as he does have a legitimate pain in his neck with some bulging discs but don't know about his lower spine." (Tr. 213.)  An MRI of the lumbar spine on the same date showed asymmetric disc changes  at L4-5 and L5-S1 which "are findings of uncertain clinical significance"; it was impossible to determine whether these findings represent very broad-based somewhat unusual herniations or relatively narrow asymmetric bulges. (Tr. 169.)  Ms. Reynolds noted on March 24, 2004, after reviewing the MRI of plaintiff's spine, "I am not certain what is causing his lower back and leg pain, as his findings are inconsistent.  His leg pain seems to be more posterior than in an L5-S1 pattern, which would be consistent with the MRI."  She referred plaintiff to a pain clinic. (Tr. 212.)

In April 2004, nurse practitioner Reynolds noted on physical exam that straight-leg raises were negative and both dorsi and plantar flexion were strong. (Tr. 211.) As set out above, Ms. Reynolds found in May 2004 that, despite plaintiff's complaints of chronic back pain, he moved about freely and fluently and straight leg raises were negative.  Dr. Balme reviewed plaintiff's MRI and "He has got apparently nothing of significance" and his exam was negative.  She suspected plaintiff was malingering. (Tr. 208-09.)

Martin Kehrli, M.D., completed a residual functional capacity assessment - physical on June 15, 2004.  He found that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds; stand and/or walk, and sit, about 6 hours in an 8-hour workday; and his ability to push and/or pull was unlimited; plaintiff could never climb and could occasionally

19 - REPORT AND RECOMMENDATION

balance, stoop, kneel, crouch, and crawl; no manipulative limitations were found.  Dr. Kehrli stated that plaintiff's report that for 2 months in early 2004 he was performing medium level work as a cook daily and spending the day on his feet was not consistent with questionnaires which showed that plaintiff spent the day watching TV and had the ability to walk a block before needing to rest.  Dr. Kehrli found plaintiff's statements not credible.  He suggested a light RFC.  J. Scott Pritchard, D.O., affirmed Dr. Kehrli's assessment.  (Tr. 244-51.)

The record indicates that a neurosurgeon told plaintiff in August 2004 that he was a poor risk for surgery and there was nothing he could do for him.  (Tr. 299, 300, 301.) Nurse practitioner Reynolds notes that the neurosurgeon had told plaintiff "to continue with medication."  (Tr. 301.)  On August 11, 2004, Ms. Reynolds refilled plaintiff's Vicodin (Tr. 301) but on August 30, 2004, she told him she would not refill that day because "he just got some last week and that is enough."  (Tr. 300.)

On September 9, 2004, plaintiff saw Sue Dimin, F.N.P., for followup of his back pain. She observed that plaintiff was walking with a cane and his movements were very stiff. (Tr. 299.)

Plaintiff saw Dr. Pieniazek on November 3, 2004, supra.  Dr. Pieniazek noted on physical exam that plaintiff had a lot of spinal tenderness with palpation at L4, L3, L1 and he had a lot of paralumbar muscle spasm with pain lateralizing to his left.  Leg lift was positive at 45 degrees on left with paresthesias going down his posterior thigh.  On neuro exam, Dr. Pieniazek noted plaintiff had 4/5 strength in his hip flexor muscles and 4/5 in his

20 - REPORT AND RECOMMENDATION

distal extensor muscles on left. On right he had 5/5 strength. Dr. Pieniazek's assessment was radiculopathy and lower lumbar pain with left-sided weakness. Plaintiff was given a prescription for Vicodin. (Tr. 296.) Dr. Pieniazek gave plaintiff an emergency refill of Vicodin on November 15, 2004, and instructed him on proper lifting and stretching techniques for his back. (Tr. 293.)

On December 20, 2004, Dr. Pieniazek noted on neurological examination that plaintiff did not have muscle weakness and strength was 5/5 in both lower extremities. (Tr. 292.)

A January 4, 2005, MRI of plaintiff's lumbar spine showed the L4-5 disc was desiccated with a central and leftward discal protrusion, possible a symptomatic site; and the L5-S1 disc was desiccated and protruded a bit centrally. (Tr. 298.)

Dr. Pieniazek noted on January 5, 2005, that plaintiff had a lot of lower back tenderness on physical exam. He noted that plaintiff had "a rather large left sided disk protrusion at L4-L5" on MRI. His assessment/plan was lumbar disk herniation with sciatica; plaintiff was undergoing physical therapy. (Tr. 285.)

On April 20, 2005, Dr. Pieniazek's assessment/plan was lumbar neuritis diagnosed on MRI. He noted lack of success in finding a neurosurgeon who was willing to help plaintiff with his pain. He continued plaintiff on Vicodin on an increased dose and plaintiff signed a pain contract. (Tr. 281.)

Plaintiff saw Dr. Pieniazek on June 15, 2005, supra. On physical exam, Dr. Pieniazek found plaintiff in distress secondary to lower lumbar pain and muscle spasticity. His

21 - REPORT AND RECOMMENDATION

assessment and plan was degenerative disk disease of lumbar spin with sciatic nerve compression and bulging disk, diagnosed on MRI. Pain management was to be continued. (Tr. 280.)

Plaintiff began seeing Dr. Mitchell at Rosewood Family Health Center in August 2005, see supra. On December 15, 2005, Anna Jimenez, M.D., noted on physical exam that plaintiff's spine was torqued to the left, with straight leg raises on left positive and right negative. In her assessment and plan, Dr. Jimenez noted that plaintiff's left side buttock muscles were in spasm; plaintiff was given Valium to help relieve the muscles. Plaintiff was told about stretching exercises, heat, ice, and massage. He was to followup with Dr. Mitchell. (Tr. 266.) In January 2006, plaintiff was given Valium to take as needed on nights when spasm was worse. (Tr. 265.)

Dr. Mitchell noted on February 13, 2006, that plaintiff was on a stable amount of pain medication and was on a pain contract. He was referred to physical therapy. (Tr. 264.)

On March 14, 2006, plaintiff told Dr. Mitchell that he would like to "'have traction.'" Dr. Mitchell asked him to consider alternative modalities and seek these out in order to be more proactive in his care. (Tr. 263.) She stressed the importance of regular stretching exercises in April 2006. (Tr. 262.)

In May 2006, Dr. Mitchell noted that plaintiff's chronic pain was "undoubtedly" compounded by some diabetic neuropathy. She found that the pain in plaintiff's legs and

22 - REPORT AND RECOMMENDATION

feet was definitely consistent with diabetic neuropathy.  She gave him a prescription for Neurontin.  (Tr. 259, 260.)

A signed note from Rosewood Family Health Center dated August 18, 2006, states "[plaintiff] has diabetes and diabetic neuropathy.  He is not able to work at this time."  (Tr. 305.)

As set forth above, in determining a claimant's credibility, the court may consider observations and testimony from physicians regarding the nature, severity, frequency, and effect of claimant's symptoms.  Smolen, 80 F.3d at 1284; Light v. Soc. Security Admin., 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7p.  It is clear from the record that the ALJ's statement that plaintiff was denied a request for a refill of Vicodin based on a lack of objective evidence, referring to Tr. 300,  Ms. Reynolds August 2004 records, is not supported by the record; she declined to refill Vicodin because he had just gotten some the previous week.  The ALJ's statement that the record contained no neurological findings is generally supported; however, in November 2004 weakness on the left was found, supra (Tr. 296), and one month later in December 2004, plaintiff had no muscle weakness and 5/5 strength, supra (Tr. 292), the record cited by the ALJ.  The record reflects that in November 2004, plaintiff was experiencing paralumbar muscle spasm as well as muscle weakness, supra (Tr. 296), and spasm on the left side in December 2005, and in January 2006 (Tr. 266).  This is not mentioned by the ALJ.

Even though not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the

determination is supported by substantial evidence.    Batson, 359 F.3d at 1197;
Tonapetyan, 242 F.3d at 1148.  Here, the ALJ provided sufficient reasons to discount
plaintiff's allegations and substantial evidence supports the ALJ's determination.  See
Pfeiffer, 2001 WL 204831, at *4.

## Residual Functional Capacity

> SSR 96-8p provides in pertinent part that,
>
> Ordinarily, RFC is the individual's maximum remaining ability to do sustained
> work activities in an ordinary work setting on a regular and continuing basis,
> and the RFC assessment must include a discussion of the individual's abilities
> on that basis.  A "regular and continuing basis" means 8 hours a day, for 5
> days a week, or an equivalent work schedule.

See 20 C.F.R. §§ 404.1529; 404.1545; 416.929; 416.945.  Plaintiff contends that the ALJ
did not discuss plaintiff's ability to do sustained work activities on a regular and continuing
basis.  Specifically, plaintiff contends that the ALJ did not properly consider the reduced
concentration, stamina and pace "which would logically result from chronic pain," along
with flare ups of back pain.  The only evidence of record as to plaintiff's concentration is
plaintiff's own allegations, and the court has found that the ALJ provided sufficient reasons
for discounting plaintiff's allegations.  In any event, the ALJ specifically found an additional
limitation that, "Due to distractions of pain and the possible side effects of medication, he
is limited to simple and repetitive work."  Plaintiff does not explain how flare ups of back
pain which is sometimes better and sometimes worse would affect a determination that a
claimant was able to perform sustained work activities.

Plaintiff contends that the ALJ failed to consider all of his impairments and resulting limitations including nonsevere impairments, including his depression with anxiety including lack of motivation; headaches; nonproliferative diabetic retinopathy; and diabetic neuropathy. He also contends that the ALJ ignored his knee and ankle impairments which the ALJ found were severe impairments.

In his decision, in addition to discussing medical records concerning plaintiff's diabetes mellitus, back and neck pain, the ALJ discusses plaintiff's diabetic neuropathy, supra. The ALJ notes, however, that no neurological findings are shown in the record. He also refers to the August 18, 2006, note from the Rosewood Family Health Center, supra. He accorded the note, which states that plaintiff was not able to work due to diabetes and diabetic neuropathy less weight since it was not a medical finding, but a vocational conclusion; it was not supported by the treatment record; and it did not provide specific information regarding the nature of any alleged limitations. The ALJ noted plaintiff's history of anterior cruciate ligament repair on his left knee and pin in his left ankle due to complications caused by polio. The ALJ also refers to certain symptoms and complaints which appear in the record, including but not limited to, pain in plaintiff's hand, hypertension, and loss of vision. He noted that these alleged impairments have caused only transient and mild symptoms and limitations or were not adequately supported by the medical evidence. In making his RFC finding, the ALJ states that he has considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 23.) The record

includes a Clinical Data and Treatment Report dated July 17, 2006, from Oregon Eye Specialists, P.C.  Plaintiff was diagnosed and evaluated for nonproliferative diabetic retinopathy.[3]  Visual acuity was 20/30.  It was noted that there were "many hard exudates present."  Plaintiff was to followup in 3-4 months  (Tr. 253.)  At the September 13, 2006, hearing, plaintiff testified in response to the question whether he noticed anything when his sugars are uncontrolled, that "I just, I have no desire to do anything."  (Tr. 341.)  He also testified that he gets a "slight" headache about once every two days, which lasts for thirty minutes to one hour.  He puts a cold towel over his left eye and lays in a dark room. (Tr. 342.)  It appears that the ALJ considered all of plaintiff's symptoms, both severe and non-severe.  Although plaintiff argues that the ALJ failed to include limitations from the symptoms cited, he points to no limitations resulting from the symptoms.

Plaintiff also contends that the ALJ relied exclusively upon the opinions of a single non-examining physician, see supra, in determining his RFC.  He argues that the ALJ's failure to obtain functional assessments from his treating physicians constitutes an error of law, urging the court to follow Eighth Circuit law, which holds that it is improper for the ALJ to rely on the opinions of reviewing physicians alone.  However, the ALJ reviewed and considered the opinions of plaintiff's treating physicians and state agency consultants in determining plaintiff's RFC, and found that the opinions concerning plaintiff's exertional

---

[3]    Diabetic retinopathy is defined as: "retinal changes occurring in diabetes mellitus, marked by microaneurysms, exudates, and hemorrhages, sometimes by neovascularization." The principal form,  nonproliferative diabetic retinopathy, "results directly from degenerative changes in retinal capillaries."  Stedman's Medical Dictionary (28th ed. 2006).

26 - REPORT AND RECOMMENDATION

limitations are generally consistent.  (Tr. 23.)  His conclusion is supported by the record. In the Ninth Circuit, "the reports of consultative physicians called in by the Secretary may serve as substantial evidence."  Magallanes v. Bowen, 881 F.2d 747, 752-53 (9th Cir. 1989); Andrews v. Shalala, 53 F.3d 1035, 1041-42 (9th Cir. 1995); Tonapetyan, 242 F.3d at 1149.

The court finds that the ALJ did not err in formulating plaintiff's RFC.

## Step five determination

Plaintiff contends that, because the hypothetical posed to the vocational expert contained a defective RFC, as argued, the ALJ's reliance upon the vocational expert's testimony for his step five findings is not supported.  The court has determined, however, for the reasons explained, that the ALJ's RFC finding was supported and not contrary to law.  Accordingly, the ALJ's step five finding on the record before him should be upheld.

## New evidence

Plaintiff contends that, if the court finds that the issues discussed above do not warrant a reversal with remand for payment of benefits, this case should be remanded to the ALJ pursuant to sentence six for consideration of Dr. Olbrich's functional assessment which is new evidence.  Defendant agrees that a sentence six remand is the correct mechanism if the court determines that the post-hearing evidence should be added to the record but contends that Dr. Olbrich's opinion is not material and no good cause has been shown.  However, contrary to both parties' contentions, Dr. Olbrich's assessment was presented to the Appeals Council and considered by it, and it is a part of the record of the Commissioner's final decision for review in this court (Tr. 5-8, 309-15).  See 20 C.F.R. §

404.970(b) ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.").

In the Ninth Circuit, this Court must consider the entire administrative record, including the decision of the ALJ and the additional material submitted to the Appeals Council, in reviewing the Commissioner's finding of not disabled. Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000); Durham v. Apfel, No. Civ. 98-1422-ST, 1999 WL 778243, at *11-*12 (D. Or. Sep. 22, 1999) (considering the entire record including the new evidence, citing Ramirez, 8 F.3d 1449); see Hogan v. Apfel, No. Civ. 00-126-HA, 2001 WL 213751, at *3-*4 (D. Or. Jan. 4, 2001) (same).

On February 1, 2007, Gary Olbrich, M.D., completed a questionnaire concerning plaintiff's impairments. He indicated that he had seen plaintiff monthly since October 17, 2006.[4] He listed plaintiff's symptoms as severe low back pain with radiation to left calf and right calf. He diagnosed degenerative disc disease with bulging L-S discs and possible nerve root compression, based on decreased reflexes at ankle and paravertebral muscle spasm. In pertinent part, Dr. Olbrich opined that it was reasonable to expect that plaintiff would experience substantial difficulty with stamina, pain or fatigue if he worked full time, eight hours a day, at light or sedentary levels of exertion; and it was reasonable that plaintiff would need to work at a reduced work pace if employed full time, eight hours a

---

[4]    The ALJ's decision is dated October 18, 2006.  (Tr. 16-27.)

28 - REPORT AND RECOMMENDATION

day, at light or sedentary levels. Dr. Olbrich indicated that plaintiff was not a malingerer. He indicated that depression secondary to back problems affected plaintiff's physical condition. He also indicated that plaintiff's impairments, both physical and emotional, were reasonably consistent with the symptoms and functional limitations described in the evaluation. He opined that plaintiff's experience of symptoms were "frequently" severe enough to interfere with attention and concentration. In response to the question, "To what degree can your patient tolerate work stress?" Dr. Olbrich marked "Uncertain." The stated reasons for this conclusion was that plaintiff currently had acute symptoms that needed further evaluation and he was incapacitated without opiate analgesics and sedative meds. Dr. Olbrich opined that plaintiff had an impairment: with a need to change positions more than once every two hours; that affects walking that interferes very seriously with ability to independently initiate, sustain, or complete normal activities of daily living; and with significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. He stated that his opinions were supported by MRI and clinical signs of arthritis in hands. Dr. Olbrich opined that, during an eight-hour day, plaintiff's maximum ability to stand and walk was less than 2 hours; maximum ability to sit was less than 2 hours, about 30 minutes; he could sit for 15 minutes before changing position; stand for 20 minutes before changing position; he needed to walk around every 20 minutes and needed to walk for 10 minutes; he needed to lie down at unpredictable intervals during a work day, currently three to four times a day. Dr. Olbrich stated that his findings were

29 - REPORT AND RECOMMENDATION

supported by bulging discs as shown in the January 2007 MRI.  In an eight-hour day, Dr. Olbrich opined that plaintiff could rarely twist or climb stairs, and could never stoop/bend, crouch, or climb ladders.    Further, reaching, handling, fingering, feeling, and pushing/pulling were affected by his impairment.  Plaintiff could occasionally lift and carry less than 10 pounds, rarely lift and carry 10 pounds, and never lift 20 pounds or more.  He stated these findings were supported by bulging discs on January 2007 MRI.  Dr. Olbrich opined that he anticipated that plaintiff's impairment or treatment would cause him to be absent from work about once a month.  He opined that plaintiff has been continuously unable to work since November 2003.  (Tr. 309-15.)

    The Appeals Council states in its Notice that "We found that this [additional] information does not provide a basis for changing the Administrative Law Judge's decision," and denied review.  (Tr. 6.)  However, a review of Dr. Olbrich's assessment shows that he found exertional limitations which are somewhat more limiting than those found by the ALJ, and that he found additional limitations not found by the ALJ, which could affect the step five determination.  If credited, the limitations appear to be more restrictive than the light category of work found by the ALJ would permit and it appears that plaintiff would not be able to perform the jobs identified by the vocational expert here, all of which were in the light range. (Tr. 365-66.)  Light work means exerting up to 20 pounds of force occasionally and/or up to 10 pounds frequently, yet Dr. Olbrich assessed plaintiff with the ability to never lift 20 pounds or more, rarely lift 10 pounds, and occasionally lift less than 10 pounds.  Light work also includes walking or standing to a significant degree, even if the

weight lifted is negligible, and Dr. Olbrich opined that plaintiff's maximum ability to walk, stand, and sit was less than 2 hours in an eight-hour day.  The ALJ found that plaintiff's ability to sit, stand, and walk was unrestricted, although he required an at will sit/stand option.  Further, it appears that, because of the manipulative limitations found by Dr. Olbrich, each of the jobs identified by the vocational expert at the hearing might be precluded.  Dr. Olbrich also opined that plaintiff would need to work at a reduced pace and would need to lie down at unpredictable intervals about 3-4 times in a day, which limitations were not included in the ALJ's hypothetical posed to the vocational expert here. Thus, the Appeals Council's finding that Dr. Olbrich's assessment would not provide a basis for changing the ALJ's decision is not supported.

Plaintiff also attaches a November 2007 letter from the U.S. Department of Labor, Bureau of Labor Statistics addressed to plaintiff's counsel, which he contends is new and material evidence on vocational issues. (Pl. Mem. Ex. A.)  It should be noted that this court dismissed plaintiff's third count challenging the Social Security Administration's reliance on alleged unreliable vocational expert testimony concerning the number of jobs that exist in the national economy for a given occupation; however, plaintiff was allowed to raise issues relating to vocational testimony in review of the agency's decision, such as whether the ALJ prevented counsel from adducing relevant evidence or whether the ALJ made findings not supported by substantial evidence. (#19 Order; see #12 Report and Recommendation.)

31 - REPORT AND RECOMMENDATION

It is clear from plaintiff's contentions that they are addressed to the third count dismissed by the court and not to any issues raised with the ALJ.

Sentence six of 42 U.S.C. § 405(g) allows remand where new, material evidence is adduced that was for good cause not presented to the agency. To the extent that plaintiff's Exhibit A is the type of new evidence contemplated by sentence six, see Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (at minimum, new evidence must be probative of mental or physical impairment), plaintiff fails to show good cause. Plaintiff's counsel admits that, if he had represented plaintiff at the agency hearing, he has similar evidence dating to 1997, which he would have presented. Accordingly, a remand pursuant to sentence six is not warranted on this basis.

## Conclusion

The court has found that the ALJ's decision is supported based on the record the ALJ had before him. However, because the court has found that Dr. Olbrich's assessment could, if accepted, change the determination at step five as to whether there are any jobs in the national economy which plaintiff could perform, the Commissioner's decision must be reversed. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone v. Heckler, 761 F.2d 530 (9th Cir. 1985)). Generally, remand is appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings. McAllister v. Sullivan,

888 F.2d 599, 603 (9th Cir. 1989); <u>Schneider v. Comm'r of Soc. Security Admin.</u>, 223 F.3d 968, 976 (9th Cir. 2000).   Here, the court finds it appropriate to remand for further proceedings, so that the ALJ may consider the additional evidence and either accept some or all of the limitations found by Dr. Olbrich and incorporate those limitations into a hypothetical for the vocational expert, or give the requisite reasons for rejecting his opinion.   <u>See</u> <u>Harman</u>, 211 F.3d at 1180.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and that the matter be remanded for further proceedings, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  *Objections to this Report and Recommendation, if any, are due by October 6, 2008.  If objections are filed, any responses to the objections are due within 10 days, see Federal Rules of Civil Procedure 72 and 6*.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's

//

//

right to appellate review of the findings of fact in an order or judgment entered pursuant

to the Magistrate Judge's recommendation.

DATED this ___18___ day of September, 2008.

MARK D. CLARKE
United States Magistrate Judge